RALPH LANGER, Plaintiff-Appellant, v. RONALD BECKER *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 87—2932

Opinion filed November 2, 1988.—Rehearing denied December 16, 1988.

Stephen B. Levy, of Chicago, for appellant.

Leonard A. Des Jardins, of Chicago, for appellees Marvin Bryan and Paul Warshaw.

PRESIDING JUSTICE WHITE delivered the opinion of the court:

Plaintiff, Ralph Langer, appeals from an order of the circuit court of Cook County, Illinois, granting summary judgment to defendants Marvin Bryan and Paul Warshaw and dismissing counts III, IV and VI of plaintiff's second amended complaint. We affirm.

On January 31, 1984, plaintiff filed a complaint for dissolution of his partnership with defendant Ronald Becker. Plaintiff alleged that he and Ronald Becker formed a partnership in 1978 and agreed to divide equally all profits and commissions earned by the partnership and all expenses of the partnership. The partnership represented toy and craft manufacturers and received commissions for the sale of the manufacturers' products. Plaintiff further alleged that, on January 26, 1984, Ronald Becker informed him that he was altering the division of profits and expenses of the partnership to a 60% to 40% split in favor of Becker. Plaintiff prayed that the partnership be dissolved, for an accounting of all transactions involving the partnership, and for a division of partnership assets.

On January 28, 1986, plaintiff was given leave to file an amended complaint and to name additional defendants. The amended complaint was stricken by the circuit court on April 29, 1986, and plaintiff was

given leave to file a second amended complaint. The second amended complaint is in seven counts, counts I, II, V and VII of which are not at issue in this appeal.

In count III of the second amended complaint, plaintiff alleged that, starting in 1980, the partnership was the exclusive representative of Henry Gordy, Inc., in the Midwest. Marvin Bryan was employed by Henry Gordy, Inc., as national sales manager and was aware of the partnership between plaintiff and Ronald Becker. Starting in late 1983 and continuing until January 1984, Marvin Bryan "intentionally and without justification induced a breach of the contractual relationship between [plaintiff] and Ronald Becker by willfully and maliciously advising, instigating and assisting Ronald Becker to coerce [plaintiff] into accepting a reduced ownership interest in the [partnership]." Ronald Becker breached the contractual relationship by unilaterally writing partnership checks in the amounts of $3,000 and $30,000 to himself and checks in the amounts of $2,000 and $20,000 to plaintiff. Plaintiff also alleged that, on or about February 1, 1984, Ronald Becker misappropriated the partnership's exclusive right to represent certain toy and craft manufacturers.

In count IV of the second amended complaint, plaintiff alleged that Paul Warshaw was aware of the partnership between plaintiff and Ronald Becker by virtue of his position as vice-president of sales of Henry Gordy, Inc. Plaintiff also alleged that Paul Warshaw "intentionally and without justification induced a breach of the contractual relationship between [plaintiff] and Ronald Becker by willfully and maliciously advising, instigating and assisting Ronald Becker to coerce [plaintiff] into accepting a reduced ownership interest in the [partnership]." As in count III, plaintiff then alleged that Ronald Becker unilaterally divided partnership income 60%-40% in favor of himself and misappropriated the partnership's right to represent certain toy and craft manufacturers.

Count VI of the second amended complaint is based upon a conspiracy to reduce plaintiff's ownership interest in the partnership. Plaintiff alleged that Ronald Becker, Marvin Bryan and Paul Warshaw "had numerous secret conversations and conspired to coerce [plaintiff] into accepting a reduced ownership interest in the [partnership]." As a result of the conspiracy, Ronald Becker misappropriated the partnership's exclusive right to represent certain toy and craft manufacturers.

Marvin Bryan and Paul Warshaw filed petitions for summary judgment which were granted by the circuit court, and counts III, IV and VI of the second amended complaint were dismissed. Plaintiff then filed a motion to reconsider which was denied by the circuit court.

■ On appeal, plaintiff asserts that a genuine issue existed as to whether the actions of Marvin Bryan and Paul Warshaw were privileged and, consequently, the circuit court erred in granting the summary judgment. It is well settled that, where a plaintiff is unable to establish an element of his cause of action through the pleadings, depositions, admissions and affidavits on file, summary judgment for the defendant is proper. (*Certified Mechanical Contractors, Inc. v. Wight & Co.* (1987), 162 Ill. App. 3d 391, 399, 515 N.E.2d 1047; *Lindenmier v. City of Rockford* (1987), 156 Ill. App. 3d 76, 85, 508 N.E.2d 1201.) While a plaintiff is not required to prove his case at the summary judgment stage, he is under a duty to present a factual basis which would arguably entitle him to judgment. (*Certified Mechanical Contractors, Inc.*, 162 Ill. App. 3d at 399; *Martin v. 1727 Corp.* (1983), 120 Ill. App. 3d 733, 737, 458 N.E.2d 990.) In the case at bar, we find that entry of summary judgment on counts III and IV of the second amended complaint was proper because plaintiff failed to present facts to show that the actions of Marvin Bryan and Paul Warshaw were not privileged.

The tort of intentional interference with contractual relations was first recognized in Illinois in *Doremus v. Hennessy* (1898), 176 Ill. 608, 52 N.E. 924. The court there stated:

> "Every man has a right, under the law, as between himself and others, to full freedom in disposing of his own labor or capital according to his own will, and any one who invades that right without lawful cause or justification commits a legal wrong, and, if followed by an injury caused in consequence thereof, the one whose right is thus invaded has a legal ground of action for such wrong. Damage inflicted by fraud or misrepresentation, or by the use of intimidation, obstruction or molestation, with malicious motives, is without excuse, and actionable. Competition in trade, business or occupation, though resulting in loss, will not be restricted or discouraged, whether concerning property or personal service." *Doremus*, 176 Ill. at 615.

■ The purpose of imposing liability in tort upon persons who interfere with the contractual relations of others is to protect a person's interest in his contractual relations against forms of interference which, on balance, the law finds repugnant. (*Swager v. Couri* (1979), 77 Ill. 2d 173, 190, 395 N.E.2d 921; *Santucci Construction Co. v. Baxter & Woodman, Inc.* (1986), 151 Ill. App. 3d 547, 553, 502 N.E.2d 1134.) This statement of the tort's purpose recognizes that an individual may be privileged to interfere in the business affairs of another,

depending on his purpose and methods, when the interference takes a socially sanctioned form. (*Swager*, 77 Ill. 2d at 190; *Schott v. Glover* (1982), 109 Ill. App. 3d 230, 234, 440 N.E.2d 376; *Beldon Corp. v. InterNorth, Inc.* (1980), 90 Ill. App. 3d 547, 551, 413 N.E.2d 98.) Otherwise stated, an individual may be privileged to interfere with a contract when he acts to protect a conflicting interest which is considered to be of equal or greater value than that accorded the contractual rights involved. *Santucci Construction Co.*, 151 Ill. App. 3d at 555; *Schott*, 109 Ill. App. 3d at 234; *Connaughton v. Gertz* (1981), 94 Ill. App. 3d 265, 270, 418 N.E.2d 858.

■ In determining whether an individual's conduct in intentionally interfering with a contract is privileged, the following are important factors:

(a) the nature of the individual's conduct;

(b) the individual's motive;

(c) the interests of the other with which the individual's conduct interferes;

(d) the interests sought to be advanced by the individual;

(e) the social interests in protecting the freedom of action of the individual and the contractual interests of the other;

(f) the proximity or remoteness of the individual's conduct to the interference; and

(g) the relations between the parties.

(Restatement (Second) of Torts §767 (1979); see also *Supreme Savings & Loan Association v. Lewis* (1970), 130 Ill. App. 2d 16, 21, 264 N.E.2d 857.) Application of these, and similar factors, have led Illinois courts to conclude that a corporate officer or director may, for a proper business purpose and in good faith, influence the actions of the corporation. (*Swager*, 77 Ill. 2d at 190; *H.F. Philipsborn & Co. v. Suson* (1974), 59 Ill. 2d 465, 474, 322 N.E.2d 45; *Loewenthal Securities Co. v. White Paving Co.* (1932), 351 Ill. 285, 184 N.E. 310.) Likewise, the stockholders of a corporation have an interest in the corporation and the right to lawfully influence the actions of the directors of the corporation. (*Petit v. Cuneo* (1937), 290 Ill. App. 16, 7 N.E.2d 774.) The Illinois courts have also held that an employee, acting in the interest of his employer, is privileged to interfere with a contract between his employer and a co-employee. *Salaymeh v. InterQual, Inc.* (1987), 155 Ill. App. 3d 1040, 1045, 508 N.E.2d 1155; *Worrick v. Flora* (1971), 133 Ill. App. 2d 755, 759, 272 N.E.2d 708; *Bentley v. Teton* (1958), 19 Ill. App. 2d 284, 289, 153 N.E.2d 495.

■ The privilege afforded to individuals such as corporate directors, officers and employees is conditional. (See *Swager*, 77 Ill. 2d at

190; *H.F. Philipsborn & Co.*, 59 Ill. 2d at 474.) A plaintiff can state a cause of action for tortious interference with a contract against an individual who is conditionally privileged if the plaintiff can set forth factual allegations from which actual malice may reasonably be said to exist. (*H.F. Philipsborn & Co.*, 59 Ill. 2d at 474; *Arlington Heights National Bank v. Arlington Heights Federal Savings & Loan Association* (1967), 37 Ill. 2d 546, 551, 229 N.E.2d 514; *Schott*, 109 Ill. App. 3d at 235; *Certified Mechanical Contractors, Inc.*, 162 Ill. App. 3d at 401.) To demonstrate malice, more than ill will must be shown, and the evidence must establish that the individual acted with a desire to harm which was unrelated to the interest he was presumably seeking to protect by bringing about the contract breach. *Arlington Heights National Bank*, 37 Ill. 2d at 551; *Certified Mechanical Contractors, Inc.*, 162 Ill. App. 3d at 401; *Hanzel Construction, Inc. v. Wehde & Southwick, Inc.* (1985), 130 Ill. App. 3d 196, 202, 474 N.E.2d 38.

█ In the present case, the record reveals that Marvin Bryan is the national sales manager of Henry Gordy, Inc. He is in constant contact with sales representatives of Henry Gordy, Inc. He works with the sales representatives to enhance the position of Henry Gordy, Inc., in the toy industry. The record also reveals that Marvin Bryan supervised the work of plaintiff and Ronald Becker and was frequently in contact with the two partners. Because it was the duty of Marvin Bryan to work with plaintiff and Ronald Becker to promote the sale of Henry Gordy, Inc.'s, products, we hold that Marvin Bryan was conditionally privileged to interfere in the contractual relationship between plaintiff and Ronald Becker.[1]

---

[1] We note that the partnership agreement between plaintiff and Ronald Becker was terminable at will. It is observed in section 768 of the Restatement (Second) of Torts that "[i]f a third person is free to terminate his contractual relation with the plaintiff when he chooses, there is still a subsisting contract relation; but any interference with it that induces its termination is primarily an interference with the future relation between the parties, and the plaintiff has no legal assurance of them." (Restatement (Second) of Torts §768 (1979).) On the other hand, a party to a contract that is not terminable at will has a certain and enforceable expectation of receiving the benefits of the contract. (*Belden Corp.*, 90 Ill. App. 3d at 552.) Consequently, certain authorities maintain that a contract which is terminable at will is entitled to less protection against interference than other contracts. (*Galinski v. Kessler* (1985), 134 Ill. App. 3d 602, 611, 480 N.E.2d 1176; *Belden Corp.*, 90 Ill. App. 3d at 552; Restatement (Second) of Torts §768, comment *i* (1979); W. Prosser, Torts §129, at 987, 996 (5th ed. 1984).) We do not here decide whether the partnership agreement was entitled to the level of protection generally afforded contracts or whether it was entitled to the level of protection afforded business expectancies. Instead, we note that plaintiff failed to set forth the factual allegations of malice necessary to state a cause of action for tortious interference with contractual relations or with business expectancies.

Paul Warshaw is the vice-president of sales of Henry Gordy, Inc. He is responsible for the sale of Henry Gordy, Inc.'s, products. In his deposition, Paul Warshaw explained that plaintiff and Ronald Becker worked for him. Paul Warshaw is also a director of Henry Gordy, Inc. As a director of Henry Gordy, Inc., Paul Warshaw had a duty to promote the corporation's interests. Lastly, Paul Warshaw is the owner of 20% of the shares of Henry Gordy, Inc. As a shareholder, Paul Warshaw had a financial interest in the corporation. We are of the opinion that Paul Warshaw was conditionally privileged to interfere with the relationship between plaintiff and Ronald Becker. The partnership's performance as sales representative of Henry Gordy, Inc., impacted directly upon the corporation.

In light of Marvin Bryan's and Paul Warshaw's conditional privilege, plaintiff was required to set forth factual allegations from which actual malice could reasonably be said to exist. This he failed to do. The only relevant allegations in the second amended complaint are that Marvin Bryan and Paul Warshaw "intentionally and without justification induced a breach of the contractual relationship between [plaintiff] and Ronald Becker by willfully and maliciously advising, instigating and assisting Ronald Becker to coerce [plaintiff] into accepting a reduced ownership interest in [the partnership]." As noted by the Illinois Supreme Court in *Arlington Heights National Bank* (37 Ill. 2d at 552), "malice is not sufficiently pleaded by simply repeating that epithet without any facts tending to support that conclusion." We have found no facts in the second amended complaint or in the remainder of the record to support plaintiff's claim that Marvin Bryan and Paul Warshaw acted maliciously and without justification. Consequently, we are of the opinion that the circuit court properly entered judgment in favor of these defendants on counts III and IV of the second amended complaint.

■ Plaintiff contends that the conditional privilege accorded corporate directors, officers and employees only applies where the directors, officers and employees interfere with contractual relations between the corporation and third parties. Plaintiff notes that in the present case the alleged interference does not involve a contract between the corporation, Henry Gordy, Inc., and the partnership. Rather, the alleged interference involves the partnership agreement between plaintiff and Ronald Becker. Thus, plaintiff advocates different treatment of corporate officers, directors and employees who interfere with the corporation's contracts and those who interfere with contracts that do not involve the corporation directly.

The conditional privilege to interfere with the corporation's con-

tracts has been granted to directors, officers and employees of the corporation so that they may act in accordance with their business judgment and discretion to further the interests of the corporation. The same reasons require giving a conditional privilege to these individuals when they interfere with the contracts of third parties which affect the corporation. In the present case, Marvin Bryan and Paul Warshaw were charged with supervising the work of plaintiff and Ronald Becker. The performance of plaintiff and Ronald Becker as sales representatives had a direct financial impact upon Henry Gordy, Inc. We see no reason not to grant Marvin Bryan and Paul Warshaw a conditional privilege in their dealings with plaintiff and Ronald Becker.

Moreover, we note that several courts have held that entities which are financially interested in the contracts of third parties are conditionally privileged to interfere in those contracts. (*Pierce Ford Sales, Inc. v. Ford Motor Co.* (2d Cir. 1962), 299 F.2d 425 (Ford Motor Co. was justified in protecting its own interest to have a dealer financially sound and was not liable for its alleged interference which prevented plaintiff from disposing of a Ford dealership contract); *Zoby v. American Fidelity Co.* (4th Cir. 1957), 242 F.2d 76 (sureties had a financial interest in the award of a completion contract and were not liable for their actions which allegedly interfered with plaintiff's prospective contract with the Navy); *Ford v. C.E. Wilson & Co.* (2d Cir. 1942), 129 F.2d 614 (bank was not liable for interference with plaintiff's contract with third party where bank was acting to enforce security given by third party); *Lake Gateway Motor Inn v. Matt's Sunshine Gift Shops, Inc.* (Fla. App. 1978), 361 So. 2d 769 (motel which entered into agreement with successor operator of a gift shop on motel premises was not liable for interference with the business relationship between the former operator of the gift shop and the successor operator); *Babson Brothers Co. v. Allison* (Fla. App. 1976), 337 So. 2d 848 (parent corporation had a financial interest in its subsidiary's contract with dealers selling and servicing parent corporation's products and was justified in interfering with the contract); *Winters v. University District Building & Loan Association* (1932), 268 Ill. App. 147 (bank which held mortgage on plaintiff's property acted within its legal rights in discouraging prospective buyer from purchasing property); *Smith v. Ford Motor Co.* (1976), 289 N.C. 71, 221 S.E.2d 282; *Felsen v. Sol Cafe Manufacturing Corp.* (1969), 24 N.Y.2d 682, 249 N.E.2d 459, 301 N.Y.S.2d 610; *Juhasz v. Quik Shops, Inc.* (1977), 55 Ohio App. 2d 51, 379 N.E.2d 235; see generally W. Prosser, Torts §129, at 986 (5th ed. 1984).) It would be anomalous to extend a conditional privilege to a corporation which interferes with contracts of third parties,

while withholding the privilege from individuals who act on behalf of the corporation.

■ Plaintiff also contends that the conditional privilege to interfere with another's contract applies only where the interfering party and the other party are competitors. Plaintiff argues that Marvin Bryan and Paul Warshaw were not privileged to interfere with the partnership because the partnership and Henry Gordy, Inc., were not competitors. The conditional privilege to interfere with a contract is not limited to instances where the parties are competitors. See *Swager*, 77 Ill. 2d 173; *Salaymeh*, 155 Ill. App. 3d 1040; *Hanzel Construction, Inc.*, 130 Ill. App. 3d 196; Restatement (Second) of Torts §768 (1979); W. Prosser, Torts §129 (5th ed. 1984).

■ Lastly, plaintiff cites *W.P. Iverson & Co. v. Dunham Manufacturing Co.* (1958), 18 Ill. App. 2d 404, 152 N.E.2d 615, and asserts that Marvin Bryan and Paul Warshaw may be held jointly liable with Henry Gordy, Inc., for the alleged interference with the partnership agreement. In *W.P. Iverson & Co.*, plaintiff alleged that certain officers, directors and stockholders of a corporation willfully caused the dissolution of the corporation in order to avoid a contract between the corporation and plaintiff. The Illinois Appellate Court held that the executive officers and stockholders of the corporation were personally liable for willfully inducing the corporation to breach its contract with plaintiff. The holding of the court in *W.P. Iverson & Co.* was rejected by the Illinois Supreme Court in *Swager* (77 Ill. 2d at 191). The Illinois Supreme Court held that a corporate officer or director may, for a proper business purpose and in good faith, influence the actions of the corporation. We decline to follow *W.P. Iverson & Co.* Instead, we follow *Swager* and we hold that corporate officers, directors, employees and shareholders have a conditional privilege to interfere with contracts of the corporation or contracts which affect the corporation.

■ We next consider whether the circuit court properly entered summary judgment in favor of Marvin Bryan and Paul Warshaw on count VI of the second amended complaint. In count VI, plaintiff alleged that Marvin Bryan and Paul Warshaw conspired with Ronald Becker to interfere with the partnership agreement between plaintiff and Ronald Becker. It is well settled that the bare allegation of the existence of a conspiracy does not of itself constitute an actionable wrong upon which liability for damages may be found. (*Galinski v. Kessler* (1985), 134 Ill. App. 3d 602, 606, 480 N.E.2d 1176; *Ancraft Products Co. v. Universal Oil Products Co.* (1980), 84 Ill. App. 3d 836, 846, 405 N.E.2d 1162.) The conspiracy to commit an act is not actionable at law unless the underlying act itself constitutes wrongful or tor-

tious conduct. (*Galinski,* 134 Ill. App. 3d at 606.) Since we have held that, upon this record, Marvin Bryan and Paul Warshaw cannot be held liable for interference with the partnership agreement between plaintiff and Ronald Becker, we must affirm the circuit court's holding that these defendants are also not liable for conspiracy to interfere with the agreement. See *Greene v. First National Bank* (1987), 162 Ill. App. 3d 914, 923, 516 N.E.2d 311; *Galinski,* 134 Ill. App. 3d at 606; *Ancraft,* 84 Ill. App. 3d at 846-47.

For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

RIZZI and FREEMAN, JJ., concur.